## McMeekin v. Vollrath

*D. J. McTighe* and *John Dawson, Jr.*, for plaintiff.
*H. W. Spencer* and *G. High*, for defendant.

KNIGHT, P. J., November 20, 1956.—On April 2, 1954, plaintiffs filed a complaint in equity seeking to enjoin defendants from building and operating a gasoline service station on Keswick Avenue in Abington Township, this county. The case proceeded and was terminated by the entry of a consent decree by the terms of which the service station was permitted to be built and operated under certain conditions set forth in the consent decree.

On May 14, 1956, plaintiffs filed a petition on which a rule was allowed on defendants to show cause why they should not be held in contempt of court for failure to comply with the conditions of the consent decree. Testimony taken pursuant to this rule developed the following facts: That defendants Paul S. Vollrath and wife own the land on which the service station is erected, that these defendants lease the station to defendant, Shell Oil Company, which company subleases the station to a Mr. Leisner who operates the same.

After a hearing before Judge Dannehower, this court held on June 6, 1956, that defendants were adjudged in contempt "for not closing their gasoline station at the times specified in the Court's Decree of December 21, 1955; for removing trash between 5:00 A. M. and 5:30 A. M.; for ringing bells at night; for storing old tires, trash, and debris in the rear on the exterior of the building and not in the trash room; for storing cars and trucks outside the building all night; for racing and tuning motors in and around the service station; for failing to shield all of the vapor lights so as to prevent glare into the plaintiffs' homes, all in violation of the said decree of December 21, 1955."

On July 9, 1956, High, Swartz, Childs and Roberts entered their appearance for the Shell Oil Company and filed a motion to set aside the adjudication of

contempt against the Shell Oil Company on the ground that there had been no proper service of the petition and rule for contempt on the company. Two hearings were held before the writer and evidence taken as to the lack of notice to the Shell Oil Company of the petition and rule for contempt and also as to whether defendants had purged themselves of contempt.

At the last hearing on October 22, 1956, Mr. Mc-Tighe reported that the violations of the decree had been corrected and eliminated except: "The only remaining thing of which we complained is the stipulation in the consent decree provided for the closing of the service station at certain times during certain nights of the week."

The court asked Mr. McTighe what he thought the decree meant by closing. Mr. McTighe replied, "By 'closing' we mean a complete closing, closing the service station and putting the lights out, and going away from the station, not putting some of the lights out and still doing some of the business, not merely stopping the serving of gasoline to patrons, but ceasing to do any business after the closing hour."

The evidence disclosed that the pumps and outside lights were turned off at the proper time but that the operator worked inside doing what has been described as "book work". Also there was some evidence of fixing a tire within the building after hours. We are of the opinion that so long as the operator confines his activities to his accounts or book work, he is not violating the consent decree.

Paragraph 2 of the consent decree provides for the closing hours on various nights of the week: "At which time all lights on the *outside* of said building shall be extinguished." (Italics supplied.) This gives rise to an inference that the lights on the inside could remain lit.

In the notes of testimony of the hearing before Judge Dannehower, we find Dr. McMeekin, the chief complainant, testifying as follows:

"Q. Are the lights on in the station itself all night?

"A. Yes, I think so.

"Q. You don't object to those lights being on all night?

"A. I do not."

If the lights are on, what difference to the neighbors does it make if the operator sits inside doing his book work? Common observation demonstrates that often a business may be closed to the public but there is work to be done before the staff can call it a day.

The offices of the court house are closed to the public at 4 p.m., but often the employes are busy until later. It is a matter of common knowledge that after our banks are closed to the public, there is much to be done by the employes. We are of the opinion and so find that defendants have purged themselves of contempt.

In reference to the motion of defendant, Shell Oil Company, to set aside the adjudication of contempt, the record discloses that the stipulation agreeing to a consent decree is signed by Mr. Spencer as attorney for the Shell Oil Company. We can find nothing in the record before us to show that the rule and petition for contempt was served on any of defendants.

The notes of the hearing on June 6, 1956, before Judge Dannehower show that Mr. Spencer attended that hearing and the court reporter noted that he appeared for defendants. There is nothing in the record to show that Mr. Spencer withdrew his appearance for the Shell Oil Company. We are of the opinion that we should dismiss this motion to set aside the adjudication of contempt. The evidence shows without contradiction that defendants did violate the

terms of the consent decree. The Shell Oil Company has in good faith made every effort to comply with the decree after receiving a copy of the same.

And now, November 20, 1956, defendants are purged of contempt but they must pay the costs of this proceeding.